

MINUTE ENTRY
SHUSHAN, M.J.
FEBRUARY 24, 2005

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EARL THOMPSON | CIVIL ACTION |
| VERSUS | NO: 04-1685 |
| THE SHAW GROUP, INC., et al | SECTION: "C"(1) |

### HEARING ON MOTION

APPEARANCES: Submitted on briefs

MOTION: DEFENDANTS' MOTION FOR PROTECTIVE ORDER (Rec. doc. 105)

**GRANTED IN PART AND DENIED IN PART** .

Before the undersigned is the motion of the defendants, Shaw Group, Inc. ("Shaw"), Tim Barfield, Jr., J. M. Bernard, Jr., Richard F. Gill and Robert Belk, for a protective order. The defendants seek an order that lead counsel for the plaintiff are:

1. Precluded from contacting any adverse party who is represented by counsel in these consolidated proceedings;

2. Precluded from contacting any current Shaw employee, who meets the requirement of Rule 4.2(b) of the Rules of Professional Conduct.[1]

3. Precluded from requesting Shaw documents from any of its current employees;

4. Required to immediately return to Shaw any documents obtained from its current employees;

5. Precluded from requesting Shaw documents from any of its former employees;

6. Precluded from discussing with any former Shaw employee any proprietary or confidential information and prohibited from discussing such information with anyone other than Shaw's counsel;

7. Precluded from discussing with any former Shaw employee anything that is subject to the attorney-client privilege or is an attorney's work product and prohibited from discussing such information with anyone other than Shaw's counsel;

8. Required to immediately return to Shaw any documents obtained from its former employees; and

9. Required to produce to Shaw's counsel all documents that reflect any communications with current or former Shaw employees to permit it to assess whether any of the documents disclosed privileged and/or proprietary information.

Shaw contends that lead counsel for the plaintiffs in this action have persistently called its former and current employees and requested that they produce its documents and divulge its confidential and proprietary information. It reports that lead counsel, in violation of Rule 4.2, contacted a former executive, Mitchell Rayner, who is represented by counsel. It urges that it will be harmed by improper disclosure of privileged and confidential information. Lead counsel dispute Shaw's right

---

[1] La. Rev. Stat. Ann. § 37:221, Art. 16, Rules of Prof. Conduct, Rule 4.2 ("Rule 4.2").

2

to any of the relief.

> Rule 4.2 of the Rules of Professional Conduct provides that:
>
> In representing a client, a lawyer shall not communicate about the subject of the representation with:
>
> (a) a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.
>
> (b) a person the lawyer knows is presently a director, officer, employee, member, shareholder or other constituent of a represented organization and (1) who supervises, directs or regularly consults with the organization's lawyer concerning the matter; (2) who has the authority to obligate the organization with respect to the matter; or (3) whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability.

Id. Rule 4.2(b) does not apply to former employees. Larkin v. United States of America, 2002 WL 31268889 (E.D.La. 2002) (Berrigan, J.). In addition to Rule 4.2, the defendants rely primarily on three authorities: (1) Bank of Louisiana/Kenwin Shops Incorporated, 1998 WL 788776 (E.D.La.)(Duval, J.); (2) In re Shell Oil Refinery Company, 143 F.R.D. 105 (E.D.La. 1992)(Mentz, J.); and (3) Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corporation, Inc., et al, 1998 WL 186705 (E.D. La. 1998)(Wilkinson, M.J.).

In the Shell Refinery litigation it became clear during the depositions that counsel for the plaintiffs were in possession of Shell documents that were not produced through the discovery process. Counsel for the plaintiffs acknowledged that they had ex parte communications with a current Shell employee but contended that he was not covered by Rule 4.2(b). The Court found that the receipt of Shell's proprietary documents was inappropriate and contrary to fair play because the

discovery process was circumvented and Shell was unable to argue against production.[2] 143 F.R.D. at 108. The Court required counsel for the plaintiffs to produce the documents to Shell, a counsel for the plaintiffs were prohibited from making any use of the documents and from any further ex parte contact with any current Shell employees.

discovery process was circumvented and Shell was unable to argue against production.[2] 143 F.R.D. at 108. The Court required counsel for the plaintiffs to produce the documents to Shell, a counsel for the plaintiffs were prohibited from making any use of the documents and from any further ex parte contact with any current Shell employees.

In the Chrysler litigation, a disgruntled former Chrysler employee, who was also a defendant in the litigation, provided counsel for plaintiff with a sworn statement and access to Chrysler documents. The Court found that the former employee had no right to waive Chrysler's attorney-client privilege or work product protection. There was "no ethical prohibition preventing plaintiffs' counsel from interviewing [the former employee] . . . or examining his documents, provided that counsel do not inquire into privileged areas." 1998 WL 186705, *5. The Court found that the concerns prompting the adoption of Rule 4.2 were largely, if not entirely, absent in the case of current statements by former employees. Id. at *6. While the Court would not prevent counsel for the plaintiff from communicating with the former employee, plaintiff's counsel was required to instruct the former employee that,

> [H]e must not discuss with or produce to plaintiffs or their counsel, consultants, agents or other representatives any information that is trial preparation material or is conceivably protected by the attorney/client privilege, the work product doctrine or Chrysler's interest in preserving the confidentiality of its and its dealers' proprietary or confidential information.

Id. at *6.

---

[2] The Court did not describe the documents, but reported that the proprietary nature of the documents was apparent from the Court's in camera inspection of them. 143 F.R.D. at 108, n. 2.

In the Bank of Louisiana litigation, counsel for the bank interviewed a former executive of Kenwin and obtained an affidavit from her. The affidavit contained two paragraphs referencing communications between the former employee and Kenwin's attorneys. 1998 WL 788776 at *3-4. The Court described the fundamental question as whether an attorney representing one party may contact a former employee of its adversary and if so what limits there are to the matters which can be discussed. Id. at *2. It found that Rule 4.2 did not extend to former employees, including former managerial employees. Id. However, former employees were barred from discussing privileged information to which they were privy. Id. In response to Kenwin's application for a protective order, the Court: (1) precluded the bank's counsel from contacting any current Kenwin employees; (2) precluded the bank's counsel from discussing anything encompassed under the attorney-client privilege with Kenwin's former employees; (3) required the bank's counsel to produce for in camera inspection any documents obtained from Kenwin employees for a determination as to whether they were subject to the attorney-client privilege and if so, the documents were to be turned over to Kenwin's counsel; and (4) required the bank's counsel to produce for in camera inspection all correspondence between the bank or its counsel and the former Kenwin executive or any other former Kenwin employee and all notes or other documents reflecting communications with any former employee for a determination as to whether such documents were subject to the attorney-client privilege.

1.   Contacting any adverse party who is represented by counsel.

Rule 4.2 prohibits lead counsel from communicating about the subject of the representation with a person they know to be represented by another lawyer in the matter, unless they have the

consent of the other lawyer or they are authorized to do so by law or a court order. Lead counsel contend that Mr. Rayner indicated a willingness to be interviewed, he did not state that he was represented and lead counsel did not learn that he was represented until February 11, 2005 at which time communications with him were terminated. Lead counsel also contend that Mr. Rayner is a party to a derivative proceeding which is consolidated with this action and he is not a defendant in this action.

Lead counsel construe Rule 4.2(a) too narrowly. It is clear that they sought to communicate with Mr. Rayner, a former Shaw executive, about the subject of their representation, the securities litigation. During the initial inquiry, lead counsel were required to ascertain whether Mr. Rayner was represented. The subject matter of the derivative action is sufficiently related to the securities litigation to trigger the prohibition on further inquiry. The fact that Mr. Rayner may have been willing to talk is immaterial. He was represented by counsel. Only Mr. Rayner's counsel could authorize lead counsel to communicate with him. If lead counsel's construction of Rule 4.2 were adopted, it would make the represented party principally responsible for the implementation of the Rule. The Rule is a restraint on the lawyer's conduct. The lawyer is obligated at the outset of the interview to ascertain whether the interviewee is represented by another lawyer in the matter. If so, the interview must be immediately terminated.[3]

2.   <u>Contacting any current Shaw employee, who meets the requirements of Rule 4.2(b)</u>.

Shaw contends that lead counsel have contacted its current employees, but it acknowledges

---

[3] The restrictions on plaintiff's lead counsel are equally applicable to the lawyer/investigators hired by them or anyone else assisting lead counsel in the investigation.

that the interviews were concluded shortly after learning that the interviewee was a current employee. In <u>Bank of Louisiana</u>, the Court precluded the bank's counsel from contacting any of Kenwin's current employees without going through its counsel. <u>Bank of Louisiana</u> and Rule 4.2(b) demonstrate that at the very outset of the interview lead counsel must inquire whether the interviewee is a current or former Shaw employee. If the interviewee identifies himself as a current employee, the interview must terminate at that point. If lead counsel contend that the person is not covered by Rule 4.2(b) and Shaw disagrees, lead counsel may apply to the Court for permission to conduct an ex parte interview.

3.  <u>Requesting Shaw documents from any of its current employees</u>.

Inasmuch as lead counsel are not permitted to interview Shaw's current employees, they will not be able to request documents from them.

4.  <u>Return to Shaw any documents obtained from its current employees</u>.

There is no evidence that any current Shaw employees provided any documents to lead counsel. If lead counsel did obtain any documents from Shaw's current employees, this was improper because the interview should not have gotten past the point of ascertaining whether the person was a former or current employee. Accordingly, if lead counsel obtained documents from current Shaw employees, these documents shall be returned to Shaw. Prior to doing so, the documents shall be marked in some manner to enable them to be identified as documents obtained from current employees that were returned to Shaw.

5.  <u>Requesting Shaw documents from any of its former employees</u>.

Shaw's corporate policy provides that all documents obtained during a person's employment

with Shaw were proprietary and confidential to Shaw and that an employee is not to retain any Shaw documents after leaving its employ. Rec. doc. 105 at p. 7. Lead counsel acknowledge that they asked Shaw's former employees to provide documents regarding its internal controls, including its Shaw-Trac software system, and its accounting practices, both generally and as they relate to individual transactions. They report that they refrained from asking for documents relating to source code, user interfaces, database design theory or other matters that could be interpreted as proprietary.

There are three categories of documents at issue: (1) those that Shaw contends are confidential, but not proprietary, and should not be disclosed to the general public; (2) those that Shaw contends are proprietary; and (3) those that are protected from disclosure by the attorney-client privilege or the attorney work product doctrine. The latter category is discussed below. At this point the discussion will focus on the first two categories.

It is Shaw's policy that all company documents obtained during a person's employment are either confidential or proprietary. This definition of confidential is too broad and would prohibit lead counsel from obtaining any documents from former employees. Shaw, however, has a proper interest in maintaining the confidentiality of some information that is not proprietary. Accordingly, any documents that lead counsel obtains from Shaw's former employees may only be disclosed to (a) each party and counsel of record for each party actively engaged in these consolidated proceedings and to paralegal assistants, office clerks and secretaries working under their supervision; and (b) outside experts, retained for consultation or for testimony. If any such documents must be presented to the Court, they must be filed under seal. Documents obtained from one former Shaw employee may not be disclosed to another former employee. These prohibitions are in place only

during this preliminary phase of the litigation and will have to be modified, presumably by agreement of the parties, once discovery begins.

Although Shaw may be entitled to restrict lead counsel's access to proprietary documents, there is no evidence that lead counsel has obtained proprietary documents from former employees. Lead counsel profess they are not seeking proprietary information. This is disputed by Shaw. To the extent lead counsel obtain any documents that are later determined to be proprietary, they will be protected from disclosure as confidential documents.

At this point Shaw has not presented a sufficient basis to warrant an order prohibiting lead counsel from obtaining documents from former employees except as discussed below concerning attorney-client communications and work product.

6.  Discussing Shaw's proprietary/confidential information with its former employees.

Shaw's definition of confidential is too broad. It would prohibit all of lead counsel's communication with Shaw's former employees. This is contrary to Rule 4.2.[4] At this time Shaw has not demonstrated the need for any restriction on lead counsel's inquiry into proprietary information beyond lead counsel's self-imposed restrictions.

7.  Discussing Shaw's privileged communications or work product with its former employees.

Lead counsel are prohibited from discussing Shaw's privileged communications with its former employees. See Bank of Louisiana, 1998 WL 788776, at *2. This prohibition also applies to information subject to work product protection. See Chrysler, 1998 WL 186706, at *5. It is

---

[4] See excerpt of ABA Formal Opinion 91-359 issued in March 1991 found in Bank of Louisiana, 1998 WL 788777, at *2-3.

incumbent on lead counsel to determine at the outset of an interview with a former employee whether that employee participated in protected communications or was privy to the work product of a Shaw attorney. For example, if lead counsel determines that the former employee worked as a paralegal in Shaw's in-house legal department, it appears that the interview would have to end. It would be virtually impossible for such a former employee to segregate what was learned by viewing privileged communications and work product from other information. On the other hand the former employee may be a low level cost accountant assigned to a particular contract, who never communicated with any Shaw lawyer and never worked in any capacity with any matter in litigation. If the interviewee reports that he was privy to privileged communications or work product, and it is not necessary to terminate the interview; the former employee must be instructed that he is not to discuss any work product or privileged communications with the interviewer. This instruction must be repeated as necessary throughout the interview and in any subsequent interview.

8.      <u>Return to Shaw any documents obtained from its former employees</u>.

Except as discussed below concerning attorney-client communications and work product, lead counsel are not required at this time to return any documents obtained from Shaw's former employees.

9.      <u>Documents with proprietary and/or privileged information obtained from former employees</u>.

Because Shaw has not demonstrated any need for any particular restriction on lead counsel's inquiry into proprietary information, it is unnecessary to require lead counsel to produce all documents obtained from former employees for <u>in camera</u> inspection to determine whether they contain proprietary information that should not have been produced.

As to documents reflecting attorney-client communications or work product that were obtained from former employees, Rule 4.4(b) of the Rules of Professional Conduct provides that:

> A lawyer who receives a writing that, on its face, appears to be subject to the attorney-client privilege or otherwise confidential, under circumstances where it is clear that the writing was not intended for the receiving lawyer, shall refrain from examining the writing, promptly notify the sending lawyer, and return the writing.

Id. Unlike the Bank of Louisiana litigation, where the affidavit indicated that the investigation had delved into the interviewee's knowledge of communications with counsel for her former employer or the Chrysler information where it was undisputed that the former employee was in possession of work product, there is no evidence lead counsel have obtained any documents that were privileged or work product. Lead counsel will not be required to produce all documents obtained from former employees to ascertain whether any documents are privileged or work product. However, if they are, then counsel is bound by the above-cited rule.

IT IS ORDERED that the defendants' motion for a protective order is GRANTED in PART and DENIED in PART in accord with the terms of this minute entry and lead counsel for the plaintiffs are:

1. Precluded from contacting any adverse party who is represented by counsel in these consolidated proceedings;

2. Precluded from any contacting any current Shaw employee and requesting any Shaw documents from its current employees;

3. Required to immediately return to Shaw any documents obtained from its current employees;

11

4. Precluded from discussing with any former Shaw employee anything that is subject to the attorney-client privilege or is an attorney's work product and prohibited from discussing such information with anyone other than Shaw's counsel; and

5. Required to maintain the confidentiality of any documents obtained from former Shaw employees as provided herein and until further order of the Court.

SALLY A. SHUSHAN
United States Magistrate Judge